UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| TERESA JANE ROHRBACH, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> BLITT AND GAINS, PC and ) <br> MIDLAND FUNDING, LLC, ) <br> ) <br> Defendants. ) | Case No. 16-CV-2137 |

## ORDER

Plaintiff filed a Complaint (#1) on May 22, 2016, seeking damages pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (FDCPA), against Defendants Blitt and Gains, PC (Blitt) and Midland Funding, LLC (Midland). Defendants filed this Motion for Summary Judgment (#28) on May 22, 2017. Plaintiff filed her Response (#33) on June 26, 2017. Defendants filed their Reply (#38) on July 28, 2017. The motion is now fully briefed. For the following reasons, Defendants' Motion for Summary Judgment (#28) is GRANTED.

BACKGROUND[1]

This case concerns a claim by Plaintiff that Defendants violated the FDCPA when they attempted, via improper means, to collect from Plaintiff a debt amount much higher than that which Plaintiff actually owed. What makes this case unusual is that the alleged illegal practice occurred in the context of a state court small claims hearing.

---

[1]These background facts are taken from the parties' Undisputed Statement of Material Facts in the Motion for Summary Judgment and Response, and exhibits and attachments filed with those documents.

Plaintiff filed this suit solely due to the document (hereinafter referred to as the "Order") in Illinois state small claims court on January 25, 2016, and is suing Defendants for no other reason.  Plaintiff owed a debt to Credit One Bank on a credit account she opened sometime in 2013 or 2014.  Plaintiff defaulted on the Credit One Bank account, owing $1,029.48.  Blitt & Gains, P.C., the attorneys for debt-collection agency Midland Funding, LLC, sent correspondence to Plaintiff on October 21, 2015, seeking payment in the amount of $1,029.48 for the Credit One Bank account.  Plaintiff did not believe there was anything improper about the letter, and understood what it was about.

On December 29, 2015, Midland, through Blitt, filed a small claims action against Plaintiff in the Iroquois County court.  In the complaint, which was hand delivered to Plaintiff, the prayer for relief sought judgment in the amount of $1,029.48.  After being served with the complaint, Plaintiff conducted research on the internet and decided she wanted more information regarding the complaint's contents.  She appeared *pro se* at the court hearing on January 25, 2016, because she felt like she needed more information to prove Midland owned the debt.  Plaintiff's intent at the hearing was to dispute the claim because she needed more proof and documentation from Midland.

Prior to the hearing, at the courthouse, Plaintiff briefly spoke with Blitt's attorney, one "Mr. Riley," where she stated she did not want to settle and that she planned to dispute the claim.  Before appearing before the judge, Riley did not hand any documents to Plaintiff.  When Plaintiff and Riley appeared before the judge,

2

Plaintiff expressed to the judge that she disputed the claim because she wanted more information and believed the information she had received from Defendants was incomplete. Plaintiff also asked if she could file a motion to dismiss.

After Plaintiff expressed to the judge that she wanted to dispute the claim and file a motion to dismiss, Riley handed the Order directly to the judge and the judge made markings on the Order. After the judge was done writing on the Order, he handed it directly to Riley, who took off the top copy and handed it to Plaintiff. The Order appears to be a standard state court order form. Someone working for Blitt, before the hearing, likely presuming Plaintiff would not appear, filled it in ahead of time, putting an "X" in the "judgment is entered" box, finding in favor of Midland and against Plaintiff in the amount of "$6,377.63." The judge drew a squiggly line through the pre-filled out judgment portion, with the line appearing to taper off just before the "$6,377.63" judgment amount, but with the line possibly touching the dollar sign. The judge wrote in that Plaintiff was "present," and checked the box indicating the matter would be continued until March 31, 2016. Plaintiff understood that the scribbles meant that the language concerning default judgment was stricken out, however she did not believe the "$6,377.63" amount was stricken.

After the hearing, Plaintiff had no further interaction with Defendants. On February 16, 2016, Blitt sent a correspondence to Plaintiff seeking payment in the amount of $1,029.48. Plaintiff filed a motion to dismiss in the state court action by the February 25, 2016, deadline set by the judge. The motion to dismiss did not make

mention of the $6,377.63 that was stricken in the Order. On March 31, 2016, a hearing was held and the judge denied Plaintiff's motion to dismiss. After the hearing, the judge continued the case. Blitt then filed an amended complaint on April 14, 2016, which requested an amount owed of $1,029.48.

Plaintiff did not contact Consumer Law Partners (her attorneys in this instant federal action) until after the March 31, 2016 hearing, although Plaintiff claims she had been looking for legal help immediately after the January court hearing. Plaintiff hired Consumer Law Partners in April or May 2016. Prior to hiring them, Plaintiff did not have any other attorneys besides her bankruptcy attorney in 2012.

According to Plaintiff, the only communication she ever had with Midland was when she was questioning her credit report and a "lady" called her back regarding her credit tradeline. She never had any communication with Midland regarding the state court action.

Plaintiff has not sustained any injury as a result of the Order. Plaintiff has not incurred any damages as a result of the Order.[2] Plaintiff has not incurred, in her state

---

[2]In response to this undisputed material fact, Plaintiff disputed the characterization that she did not incur any damages, stating that she did in fact suffer damages, and pointed to the following exchange in her deposition as proof:
    Q:    As a result of this order, you filed suit, correct?
    A:    Correct.
    Q:    And what was the reason for filing suit?
    A:    Because I had no idea where this $6,377 came from and it could have been just about anything.
    Q:    Ok. So fair to say you were misled by the amount that was on the January 25 order; is that correct?
    A:    Correct.

court action, any attorney's fees as a result of the Order. She has not incurred any cost or expense (outside of bringing this instant federal court action) as a result of the order, nor has she suffered any economic harm. Plaintiff has never paid any fees, expenses, or costs to Consumer Law Partners nor has Plaintiff ever received a bill or invoice and does not know what Consumer Law Partner's rates are. The Order did not affect the way she interacted with Defendants going forward.

Plaintiff has defaulted on a Barclay card for which she is currently making payments. Other than the Barclay card and the Credit One Bank card debt at issue, she has not defaulted on any other debts, and has never been sued for outstanding debts before.

*Procedural History*

Plaintiff filed her Complaint (#1) in this matter on May 22, 2016, seeking damages pursuant to §§ 1692e, e(2)(A), e(5), e(10), f, and f(1) of the FDCPA and the Illinois Consumer Fraud and Deceptive Practices Act (815 Ill. Comp. Stat. 505/10a) (ICFA). The court denied the motion to dismiss with regard to whether the Order constituted a communication under § 1692e, and whether it was "material," leaving the question for summary judgment, when "applicable procedural rules permit a more fulsome and searching analysis." *Access 4 All, Inc. v. Chicago Grande, Inc.*, 2007 WL 1438167, at *1 (N.D. Ill. May 10, 2007). The court did grant the motion as to Plaintiff's claim under the ICFA.

ANALYSIS

Defendants have raised four arguments in support of their motion for summary

judgment: (1) Plaintiff cannot recover under the FDCPA because the Order did not involve a communication in connection with the collection of a debt; (2) Plaintiff does not have standing to under Article III of the United States Constitution because she did not suffer any injury-in-fact; (3) she cannot prove that Defendants' supposed FDCPA violations are material; and (4) in the event there was a violation, Defendants are not liable under the *bona fide* error defense.

*Summary Judgment Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's favor toward the nonmoving party does not extend to drawing inferences which are only supported by speculation or conjecture. See *Singer*, 593 F.3d at 533. In addition, this court "need not accept as true a plaintiff's characterization of the facts or a plaintiff's legal conclusion." *Nuzzi v. St. George Cmty. Consol. Sch. Dist. No. 258*, 688 F. Supp. 2d 815, 835 (C.D. 2010) (emphasis in original).

The party opposing summary judgment may not rely on the allegations contained in the pleadings. *Waldridge*, 24 F.3d at 920. "[I]nstead, the nonmovant must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004), quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Specifically, to survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007), citing *Celotex Corp.*, 477 U.S. at 322-23.

*Whether a Violation of § 1692e and 1692f Occurred*

Defendants argue that Plaintiff has not established the existence of a communication from a debt collector in connection with the collection of a debt, and thus there is no genuine material fact that a violation of § 1692e occurred. Rather, the only communication to Plaintiff was a court continuance Order handed down by the judge that included a pre-filled in default judgment amount that was subsequently crossed out by the judge. Thus, there was nothing false, misleading, or unfair in the court's order and no violation of the statute occurred. Plaintiff responds that she was indeed misled by the Order, and that it was an attempt by Defendants to collect an improperly inflated debt, and thus violated the FDCPA.

"The primary goal of the FDCPA is to protect consumers from abusive,

7

deceptive, and unfair debt collection practices, including threats of violence, use of obscene language, certain contacts with acquaintances of the consumer, late night phone calls, and simulated legal process." *Bass v. Stolper, Koritzinsky, Brewster, & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997). "A basic tenet of the Act is that all consumers, even those who have mismanaged their financial affairs resulting in default on their debt, deserve 'the right to be treated in a reasonable and civil manner.'" *Bass*, 111 F.3d at 1324, quoting *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982). Essentially, it prohibits a debt collector from using certain enumerated collection methods in its effort to collect a "debt" from a consumer. *Bass*, 111 F.3d at 1324.

Section 1692e provides that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e. Section 1692e also specifies certain conduct that would be a violation of the section, including: the false representation of the character, amount, or legal status of any debt (§ 1692e(2)(A)); the threat to take any action that cannot be legally taken or that is not intended to be taken (§ 1692e(5)); and the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer (§ 1692e(10)). Similarly, §1692f prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect any debt, such as "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

The allegation in this case is that Defendants improperly used a court document, in the context of litigation, to mislead Plaintiff about the amount of debt she was responsible for, in connection with the collection of that debt. Previously, under Seventh Circuit jurisprudence, there was doubt over whether communications in the context of state court litigation constituted a FDCPA violation under § 1692e. See *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 941-42 (7th Cir. 2011). In *O'Rourke*, the consumer was sued in state court by debt collector Palisades on an outstanding debt. Attached to Palisades' state court complaint was an exhibit that closely resembled a credit card statement listing the balance owed and placing Palisades in the place of the issuer. The consumer sued under the FDCPA, alleging that "the attachment was actionable because it was meant to mislead *the state court judge.*" *O'Rourke*, 635 F.3d at 939 (emphasis added). The consumer claimed that the statement was "materially false, deceptive, and misleading to a state court judge, specifically one who is viewing it in the context of granting a default judgment." *O'Rourke*, 635 F.3d at 939.

The court found that, "when read in light of the Act's purpose and numerous provisions, the prohibitions are clearly limited to communications directed to the consumer and do not apply to state judges." *O'Rourke*, 635 F.3d at 941. The court noted that, to be actionable under § 1692e, "a misleading statement must have the ability to influence a *consumer's* decision." *O'Rourke*, 635 F.3d at 942 (emphasis in original). The court found that the Act did not extend its protection beyond the consumer, as there

9

was no reference to anyone else in the process who may have a consequential, let alone extremely consequential, role in the debt-collection process. *O'Rourke*, 635 F.3d at 943. The Act, the court found, was "limited to protecting consumers and those who have a special relationship with the consumer – such that the Act is still protecting the consumer – from statements that would mislead consumers[]" and was "not similarly interested in protecting third parties." *O'Rourke*, 635 F.3d at 943. Judges, the court concluded, do not have a special relationship with consumers, as they stand as impartial decision-makers in the discharge of their office. *O'Rourke*, 635 F.3d at 944.

Recently, the Seventh Circuit issued its decision in *Marquez v. Weinstein, Pinson, & Riley, P.S.*, 836 F.3d 808 (7th Cir. 2016), where it held that § 1692e applied to the content of state-court debt collection pleadings and filings. In *Marquez*, the defendants had included a deceptive and misleading statement in a state court complaint. The court noted that the purpose of the FDCPA was to eliminate abusive debt collection practices, to ensure that those debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers, and that such a purpose would be undermined if the FDCPA was inapplicable to communications that occurred in the context of litigation, particularly in the debt collection area in which judgments are overwhelmingly reached through forfeiture, and thus misleading or deceptive statements are more likely to influence the response of the defendant without ever coming to the attention of the court in any meaningful way. *Marquez*, 836 F.3d at 811-12.

Courts in the Seventh Circuit, since the issuance of *Marquez*, have found that misleading statements in the context of state court litigation can violate the FDCPA. See *Eul v. Transworld Systems*, 2017 WL 1178537, at *13 (N.D. Ill. Mar. 30, 2017) (concerning affidavits attached to defendants' state court debt collection complaints in which the affiant falsely represented that s/he was "authorized" by the creditor to make the representations in the affidavit); *Rosales v. Weltman, Weinberg & Reis Co.*, 2017 WL 1436957, at *4-5 (N.D. Ill. Apr. 24, 2017) (state court complaint filed by defendants created a significant risk of misleading the objectively unsophisticated consumer when it falsely asserted they had standing to sue); *Rehman v. Pierce & Associates, P.C.*, 2017 WL 131560, at *3-4 (N.D. Ill. Jan. 13, 2017) (finding that the filing of a legally defective debt collection suit can violate § 1692e where the filing falsely implies that the debt collector has legal recourse to collect the debt); *Heyer v. Pierce & Associates, P.C.*, 2017 WL 75739, at *5 (N.D. Ill. Jan. 9, 2017) (rejecting defendant's argument that its conduct in sending a Notice of Sale of the Property is not actionable under the FDCPA because it was merely "comply[ing] with state court procedures" for foreclosure cases). The courts in *Eul* and *Rehmen* also found that § 1692f can apply to claims in the context of state court litigation. *Eul*, 2017 WL 1178537, at *15; *Rehman*, 2017 WL 131560, at *4.

The facts of this case are unique, unusual, and likely never to be completely replicated in any future case. A state court small claims debt collection case was filed against Plaintiff for the amount of $1,029.48. A hearing was held on January 25, 2016. At the courthouse, but before the case was heard by the judge, Plaintiff met with

Defendant Blitt's attorney Riley, and informed Riley she did not want to settle and that she planned to dispute the claim. Before the start of the hearing, no documents were handed by Riley to Plaintiff. When the parties did finally appear before the judge, Plaintiff informed the judge that she was disputing the claim and asked if she could file a motion to dismiss. After Plaintiff made this statement, Riley handed the Order to the judge and the judge made markings on the Order, crossing out the default judgment portion Riley (or someone else at Blitt) had filled in pre-hearing and wrote that the case was continued. The judge handed the order to Riley, who then tore off a copy to hand to Plaintiff.

Under the facts as stated above, the court finds that no genuine issue of material fact exists as to whether there was a violation of § 1692e and/or § 1692f.

First, there is no evidence of any intent to direct any communication to Plaintiff concerning the inflated debt amount in the Order. See *O'Rourke*, 635 F.3d at 941. Based on all the undisputed material facts, from before, during, and after the January 25, 2016 hearing, the fact that Plaintiff saw the $6,377 amount on the Order was completely inadvertent. Blitt sent Plaintiff correspondence in October 2015 that she owed $1,029.48, and the small claims action complaint stated the amount owed as $1,029.48. During her meeting with Riley at the courthouse before the hearing, Riley never threatened or informed Plaintiff, or indeed said anything at all to Plaintiff, about her now owing $6,377. At the hearing, no mention was made by the judge or Riley about Plaintiff owing $6,377. On February 16, 2016, Blitt sent correspondence to Plaintiff seeking

payment in the amount of $1,029.48, and on April 14, 2016, filed an amended small claims complaint requesting an amount owed of $1,029.48.

Thus, the only evidence Plaintiff has provided of an attempt on Defendants' part to mislead her is the $6,377 on the default judgment portion of the Order, which was handed to her *after* the judge had already indicated the case would be continued and had crossed out the portion marking default judgment. Plaintiff claims she was misled because the squiggly line crossing out the default judgment did not quite reach the $6,377 dollar amount. However, the order itself made it very clear that no default judgment was being entered and the case was being continued. Riley never attempted to directly show Plaintiff the $6,377, at any point during, before, or after the hearing. The fact that Plaintiff even saw the $6,377 amount appears to have occurred entirely by accident. Plaintiff has not provided any competent evidence, outside of the allegations in Complaint, that the communication was directed to her in an attempt to mislead her about what amount she actually owed.

Further, Plaintiff's actions after seeing the Order do not exactly support her claim of being misled. She never mentioned the $6,377 to Riley or the judge at the hearing, and her motion to dismiss filed ten days later did not make mention of the $6,377 amount. Until this lawsuit, Plaintiff never made mention about the $6,377 amount or how she was mislead. She says she contacted other attorneys immediately after the January 25 hearing, but did not hire Consumer Law Partners until April or May 2016, after her motion to dismiss had been denied. This instant lawsuit was filed months

13

after the January 25 hearing, and *after* Plaintiff had received further correspondence from Blitt and the amended complaint had been filed stating that Plaintiff owed only the original $1,029.48 amount. Plaintiff has not provided any competent evidence that she was misled.

The facts of this case are very different from the other cases cited involving state court litigation filings found to run afoul of the FDCPA. Plaintiff has cited no cases finding a violation of the FDCPA with facts of the same nature as this case. Rather, all of the cases in the Seventh Circuit dealing with FDCPA claims in the state litigation context after *Marquez* (the *Eul, Rosales, Rehman,* and *Heyer* cases discussed above) have dealt with false or misleading representations directly made to debtors in the forms of complaints or filings filed with the court and served on the debtors, markedly different from, and certainly not the equivalent of, the roundabout, indirect, and inadvertent manner in which Plaintiff came to view the improper debt amount in this case.

Further, based on the undisputed material facts, no actual attempt was made to deceive the judge. Plaintiff appeared at the courthouse before the hearing, where she spoke with Defendants' attorney Riley. Plaintiff and Riley discussed her case, and when the case was called they both appeared before the judge. There is no evidence that Riley met with the judge before Plaintiff arrived. There is also no evidence that Riley attempted to have the Order entered before Plaintiff arrived, nor at any point during or after the hearing. Any suggestion that Riley was attempting to use an unconscionable means to collect the debt by "pulling a fast one" and submitting the

Order to the judge, when the judge asked for an order to draw up a continuance, beggars belief, and would require either staggering stupidity or incompetence on Riley's part. Plaintiff had appeared and stated she was contesting the claim and wanted more time to consider her options. There is no way, at that point, that the judge would have entered default judgment against Plaintiff.[3] There is no indication at all in the record that Riley or the judge was considering entering default judgment after Plaintiff spoke at the hearing. In fact, the judge went so far as to cross out the default judgment portion to make clear the case was continuing. Based on the undisputed material facts, there was no attempt made to deceive the court at the January 25 hearing.

Summary judgment is the put up or shut up moment of the lawsuit. *Koszala*, 385 F.3d at 1111. Unlike the pleading stage, where the court accepts all allegations as true and the record has not been fully developed, the non-movant at summary judgment must provide definite, competent evidence to demonstrate that a genuine issue of material fact exists as to her claims. *Waldridge*, 24 F.3d at 920; *Butts*, 387 F.3d at 924. Plaintiff has not done that. Plaintiff has not shown, beyond the actuality of the $6,377 amount in the Order and her own claim of being mislead (despite that being belied by the surrounding facts), that Defendants ever directed misleading or false information to

---

[3]The idea that a judge would blindly enter a default judgment order handed to him by one of the parties, with an amount already filled in and without looking at the complaint filed in the case to check for consistency and accuracy, is perplexing to this court. This court has entered countless orders for default judgment over the years, and always reads the motion and earlier filings carefully to determine that the amount sought in the judgment is fair and consistent with the amount alleged in the initial complaint, other filings, and affidavits/exhibits in support.

Plaintiff in an attempt to collect on the debt, nor is there any evidence that Defendants actually submitted or directed such activity to the court. Thus, no actual effort was made to collect the debt from Plaintiff in a manner proscribed by the FDCPA. See *Bass*, 111 F.3d at 1324.

The court acknowledges that it is questionable as to why the Order drafted by Blitt had $6,377 in the default judgment box, as opposed to the proper $1,029.48 amount. However, there has been no actual violation of the spirit and purpose of the FDCPA, which is to eliminate abusive debt collection practices, as no abusive debt collection practices were actually directed by Defendants at either the court or Plaintiff. See *Marquez*, 836 F.3d at 811. Therefore, there is no genuine issue of material fact as to whether Defendants' actions violated the purpose behind the FDCPA, and the court cannot say that this case, based on the facts adduced in discovery, should go to trial.

IT IS THEREFORE ORDERED:

(1) Defendants' Motion for Summary Judgment (#28) is GRANTED. Judgment is entered in favor of Defendants and against Plaintiff.

(2) The final pretrial conference set for September 18, 2017, and the jury trial set for September 26, 2017 are hereby VACATED.

(3) This case is terminated.

ENTERED this 16th day of August, 2017.

s/ COLIN S. BRUCE
U.S. DISTRICT JUDGE